# United States Court of Appeals
## For the First Circuit

No. 16-2308

TOM DELANEY,

Plaintiff, Appellant,

v.

TOWN OF ABINGTON; DAVID MAJENSKI; CHRISTOPHER J. CUTTER;
KEVIN F. SULLIVAN,

Defendants, Appellees,

MASSACHUSETTS ATTORNEY GENERAL,

Interested Party, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Stahl, and Barron,
Circuit Judges

John J. Hightower, for appellant.
Deborah I. Ecker, with whom Joseph S. Fair and KP Law, P.C. were on brief, for defendant-appellees.
Todd M. Blume, Assistant Attorney General of Massachusetts, with whom Maura Healey, Attorney General of Massachusetts, was on brief, for interested party Massachusetts Attorney General.

May 4, 2018

**BARRON**, **Circuit Judge**. This appeal arises out of a lawsuit Tom Delaney brought against the Town of Abington, Massachusetts and leaders of the Abington Police Department (Department) -- Chief David Majenski, Deputy Chief Christopher Cutter, and Lieutenant Kevin Sullivan. Delaney brought a variety of federal and state law claims in which he alleged that, while he was an officer in the Department, the defendants retaliated against him for (1) filing reports with the Massachusetts Office of Attorney General (AG Office) that raised concerns about a traffic ticketing policy that he contends that the Department had adopted and (2) engaging in union activity.

The District Court granted summary judgment to the defendants on all of Delaney's claims, and Delaney now appeals that ruling as well as the District Court's order granting the AG Office's motion to quash a subpoena. We affirm.

**I.**

According to Delaney's complaint, in January 2013 he was informed about what he characterizes as the Department's "Money Ticket Quota System." Delaney contends that this system required patrol officers to issue more money citations than warnings.

At the Department's police roll call on May 29, 2013, Delaney approached his supervisor to register his concern that this "system" was unlawful under Newton Police Association v. Police Chief of Newton, 828 N.E.2d 952 (Mass. App. Ct. 2005). In

that case, the Massachusetts Appeals Court held that a police chief's order "directing officers assigned to traffic enforcement . . . to issue traffic violation citations to traffic offenders, and to cease issuing written warnings" ran afoul of a state statute, Mass. Gen. Laws ch. 90C, § 3(A)(1), which "confer[s] independence on officers assigned to traffic enforcement duty" as to whether or not to issue tickets or warnings. Newton, 828 N.E.2d at 953-54. Delaney also told his supervisor at that time that he did not want to follow the alleged ticketing system and handed him a copy of Department Rule 7.0, which the parties agree concerns compliance with unlawful orders.

Delaney later filed a report with the AG Office in which he set forth his concerns about the lawfulness of the ticketing system. He first filed the report on April 7, 2014, and later refiled the same report on October 14, 2014, apparently because the AG Office lost the report after he filed it the first time. Delaney alleges that, in retaliation for these filings, the defendants subjected him to a number of adverse employment actions. Delaney separately alleges that, following his election as president of the patrolmen's union in April 2014, the defendants retaliated against him for his union activity.

On May 1, 2015, Delaney brought this suit in state court in Massachusetts. His complaint sought relief for two claims under § 1983 based on retaliation for the exercise of his First Amendment

- 3 -

rights in connection with, respectively, the concerns that he had raised with the AG Office regarding the ticketing system and his union activity. He also brought Massachusetts law claims pursuant to the Commonwealth's whistleblower statute, Mass. Gen. Laws ch. 149, § 185, and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§ 11H, 11I. Finally, he brought a Massachusetts common law claim for intentional infliction of emotional distress.

The defendants removed the case to federal court in the District of Massachusetts. During discovery, Delaney subpoenaed the AG Office for documents concerning whether that office had told Majenski about the report that Delaney had filed with it. After the AG Office complied with this subpoena, Delaney filed a subpoena to depose the office, which it moved to quash. The District Court granted the motion to quash.

Following discovery, the District Court granted the defendants' motion for summary judgment as to all claims. Delaney v. Town of Abington, 211 F. Supp. 3d 397, 407-08 (D. Mass. 2016). Delaney now brings this appeal, in which he challenges both the summary judgment ruling and the order granting the motion to quash.

**II.**

We start with Delaney's challenge to the District Court's grant of summary judgment as to the two claims that he brings under § 1983 for retaliation against him for exercising his First Amendment rights -- the first of which concerns his filings

- 4 -

with the AG Office and the second of which concerns his union activity.  Our review is de novo.  See Sánchez-Figueroa v. Banco Popular de P.R., 527 F.3d 209, 213 (1st Cir. 2008).  We must draw all inferences in favor of the nonmoving party, id. at 211, and then determine whether the District Court was right that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## A.

To prove that a public employer violated the First Amendment rights of a public employee by subjecting him to an adverse employment action in retaliation for engaging in protected speech, the employee first must show that he "spoke as a citizen," Curran v. Cousins, 509 F.3d 36, 45 (1st Cir. 2007) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)), and "that the speech was on a matter of public concern."  Id.  If the public employee can make that showing, then "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."  Id.; see also Pickering v. Bd. of Educ. of Twp. High School Dist. 205, Will Cty., Ill., 391 U.S. 563, 568 (1968).  The Supreme Court has made clear that "[t]his consideration reflects the importance of the relationship between the speaker's expressions and employment.  A government entity has broader discretion to restrict speech when it acts in its role as

- 5 -

employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." Garcetti, 547 U.S. at 418.

Even if the public employee can succeed in showing that the public employer lacked such a justification, however, the public employee must still show a causal connection between the alleged retaliatory action and the protected expression. To do so, the public employee must demonstrate "that the protected expression was a substantial or motivating factor in the adverse employment decision." Curran, 509 F.3d at 45. In the event that the public employee makes that showing, the defendant may then avoid liability by showing that it would have undertaken the adverse employment action regardless of the plaintiff's protected conduct. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 131 (1st Cir. 2004).

Finally, it is important to emphasize that not every action that an employer takes that a public employee may dislike constitutes the kind of adverse employment action that can ground a First Amendment retaliation claim. Rather, the adverse employment action must be "one that 'affect[s] employment or alter[s] the conditions of the workplace.'" Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (alterations in original) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548

U.S. 53, 61-62 (2006)).  Such an action "typically involves discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'"  Id. (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

**B.**

The District Court granted summary judgment to the defendants as to the first of Delaney's two § 1983 First Amendment retaliation claims because Delaney failed to show that there is a genuine issue of material fact about whether his filing of the reports with the AG Office were "a substantial or motivating factor in the adverse employment decision[s]" that he alleged had been taken against him.  Curran, 509 F.3d at 45.  In so ruling, the District Court considered two separate time periods -- the one that ran from when Delaney first filed the AG Office report, in April 2014, to when he re-filed the report, in October 2014, and the one that followed this re-filing.  We consider each of these periods separately in reviewing the District Court's ruling as to this § 1983 claim.

**1.**

The District Court determined that Delaney identified no basis in the record from which a jury could reasonably find that, during the first time period, the defendants knew that he had filed

the report with the AG Office.  Because "one cannot have been motivated to retaliate by something he was unaware of," Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013), Delaney must show that the District Court erred in so ruling.  But he has not done so.

Delaney first attempts to show that a jury reasonably could infer that the defendants knew as of April 9 that he had filed the report with the AG Office by pointing to comments that, according to his deposition testimony, Majenski had made to him in a meeting that occurred on that day.  In that testimony, Delaney alleges that Majenski told him at this meeting that "people have come against me [Majenski] and they may win the battle but I always win the war."

But while Delaney contends that this statement fairly permits the inference that Majenski knew that Delaney had filed the AG Office report, we do not see how that is so.  Majenski's alleged statements make no reference to the AG Office report, and Delaney himself acknowledges in his complaint that Majenski made the statements directly in response to Delaney having told him at that same meeting (without reference to the report) that Delaney had stopped adhering to the ticketing system.

Nor does Delaney point to anything in the record to suggest that there was any practice whereby reports like the one that he filed with the AG Office ordinarily, once filed, would

- 8 -

have been provided to the Town by that office by the time of this April 9 meeting. In fact, the record shows that the defendants learned of Delaney's re-filing of the report only because Delaney himself thereafter gave it to the Town Manager.

Thus, these statements by Majenski -- which do not by their terms reference the report and which were made in response to Delaney's comments that also did not refer to that report -- provide no basis for a reasonable inference that any of the defendants knew that Delaney had filed it. Accordingly, the record evidence concerning these statements provides no basis for overturning the District Court's ruling as to this claim.

Delaney also points to the fact that the record shows that he was assigned by a supervisor to program a fax machine on April 7. He contends that a jury could have reasonably inferred that the defendants knew that he had filed the report from the fact of this assignment, which he appears to contend in and of itself constitutes an adverse employment action.

In pressing this argument, Delaney relies on Noviello v. City of Boston, 398 F.3d 76 (1st Cir. 2005), for the proposition that an adverse employment action carried out in close temporal proximity to a public employee's protected expression may suffice to support an inference that there is a causal link between the protected expression and the act of retaliation. See id. at 86. But in Noviello -- and in other cases addressing the role that

temporal proximity may play in establishing a causal link between protected conduct and an act of retaliation -- the record independently provided a basis from which a jury could reasonably conclude that the employer knew of the employee's protected conduct at the time that the adverse employment action allegedly occurred. The temporal proximity was thus deemed sufficient in those cases to provide a basis for inferring causation in light of the employer's knowledge of the protected conduct rather than to provide a basis for inferring that the employer had knowledge of the protected conduct. Id.; see also Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 50 (1st Cir. 2010) (holding that temporal proximity was relevant to the causation analysis where defendant knew of employee's protected conduct); Davignon v. Hodgson, 524 F.3d 91, 106-07 (1st Cir. 2008) (same). Thus, this line of cases does not help Delaney in arguing for the proposition that the employer's knowledge of the protected expression may be inferred from the temporal proximity of an adverse employment action.[1] Nor do we see anything about the circumstances of this case that would lead us to conclude that the defendants' knowledge

---

[1] Moreover, there is a substantial body of out-of-circuit precedent that rejects that very proposition. See Equal Emp't Opportunity Comm'n v. EmCare, Inc., 857 F.3d 678, 683 (5th Cir. 2017); Alexander v. Wis. Dep't of Health & Family Servs., 263 F.3d 673, 688 (7th Cir. 2001); Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997).

of the AG Office report could reasonably be inferred merely from the fact that Delaney was assigned to program the fax machine when he was.[2]

**2.**

We turn next to the time period that followed Delaney's re-filing of the report with the AG Office in October 2014. As the District Court noted, the defendants acknowledged that Delaney had delivered a copy of that report to the Town Manager on the same day that he re-filed it with the AG Office. Thus, the defendants did not dispute below -- nor do they dispute on appeal -- that they had knowledge of the report at the time of the retaliation that Delaney contends that they engaged in during this time period.

But, even though the defendants knew during this period that Delaney had filed the report with the AG Office, the District Court still ruled that Delaney had failed to meet his burden of showing a genuine issue of material fact as to whether the defendants had retaliated against him for filing that report. And, here, too, we agree.

---

[2] In so concluding, we note that the record does not make clear when on April 7 Delaney filed the AG Office report or at what time on that same day he was asked to program the fax machine. We note as well that we do not mean to suggest that the fax machine assignment would qualify as an adverse employment action, as we have no need to address that question.

- 11 -

In challenging that ruling, Delaney points to an email that he received from a police sergeant -- who is not a defendant in this case -- that was copied to Majenski, Cutter, and Sullivan. The email concerned Delaney's use of profanity while fielding an incoming 911 call on October 17 after Delaney repeated the caller's profanity over the air to the responding officers.

Delaney contends that the email constituted an adverse employment action because it amounted to a reprimand. And, because his supervisors knew at the time that he had filed the report with the AG Office, Delaney argues that the jury could reasonably infer that the email was sent in retaliation for his having filed that report.

But, even if such a causal inference would be reasonable, we have previously explained that isolated "comments by [a] supervisor that were critical of plaintiff's job performance" are "without more . . . too trivial to deter a person of ordinary firmness from exercising First Amendment rights." Barton v. Clancy, 632 F.3d 9, 30 (1st Cir. 2011) (citing McKee v. Hart, 436 F.3d 165, 170-71 (3d Cir. 2006)). And, given the nature of the email, we conclude that it is too mild to constitute the kind of

adverse employment action that could ground a First Amendment retaliation claim.[3]

Delaney also points to the fact that, in May 2015 -- and thus, again, after the defendants knew he had filed the report -- Majenski assigned Delaney to the role of Police Prosecutor, a role that, under Massachusetts law, meant that Delaney could prosecute certain criminal cases. See Mass. R. Crim. P. 2(b)(13). Delaney contends that this assignment constitutes an adverse employment action because the record shows that he did not want this position and that this assignment forced him to forego the chance to obtain certain types of overtime pay and to work weekends. He thus contends that the causal link that he must show to demonstrate retaliation for his protected expression may be inferred from the fact of this assignment.

But, even assuming that this assignment constitutes an adverse employment action, it occurred some seven months after the defendants knew that Delaney re-filed his report. Given that substantial passage of time, as well as the absence of any other supporting evidence of causation, we cannot conclude that Delaney has provided a sufficient basis from which a jury could reasonably

---

[3] The email instructed Delaney that while "[i]t is important to reiterate the demeanor of the calling party especially if there is an Officer Safety issue[,] [f]or future practice I would advise you to state over the air something along the lines such as, '[t]he calling party is using profanities towards police.'"

conclude that there was a causal connection between his filing the report with the AG Office and the defendants' decision to make this assignment. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity.").

Finally, Delaney points to his suspension in December 2015. But, the same concern about the absence of a reasonable basis for concluding that there was a causal link between his filing of the report and his assignment to the role of police prosecutor leads us to reject his argument that his suspension was causally related to his filing of the report. For, while a suspension may constitute an adverse employment action, Delaney's suspension occurred some seven months after his assignment to the role of police prosecutor -- and fourteen months after defendants knew that he had re-filed the report. As Delaney alleges nothing other than the fact that the suspension occurred after the defendants knew of his filing of the report to support the inference of a causal link, the fact of his suspension provides no basis for overturning the grant of summary judgment dismissing Delaney's claim.

**3.**

For these reasons, we agree with the District Court that there is no "genuine dispute as to any material fact," Fed. R.

Civ. P. 56(a), as to whether Delaney suffered retaliation in violation of the First Amendment because of the filings he made with the AG Office. We therefore affirm the District Court's determination that the defendants are entitled to a grant of summary judgment as to this § 1983 claim.[4]

## c.

We turn next to Delaney's challenge to the District Court's grant of summary judgment as to his other § 1983 claim. In this claim, he alleges that the defendants impermissibly retaliated against him for his protected union activity. He appears to premise this claim on an email that Cutter, who was the Department's deputy chief, sent Delaney after Cutter met with

---

[4] The District Court did not address Delaney's additional allegation that the defendants created a hostile work environment and thereby "isolated [him] from his peers." But, Delaney presses this contention merely by listing a series of incidents (often without citation to directly supporting parts of the record), of which some occurred prior to his filing of the report in April, and others occurred well after the defendants knew that he had refiled the report. Because Delaney makes no developed argument concerning causation, this basis for challenging the grant of summary judgment as to this § 1983 retaliation claim fails. The District Court also did not address Delaney's separate contention that it erred in granting summary judgment to the defendants as to this § 1983 retaliation claim because the record provides a basis from which a jury could reasonably find that the defendants ignored their own harassment policies and conducted a "sham" investigation into his allegations regarding the ticketing policy. But, on appeal, Delaney contends that the defendants acted in this way in order to "cover up" what he contends was the town's "illegal" ticketing policy without asserting that the defendants did so in order to retaliate against him for having filed the AG Office report. Thus, this challenge fails on causation grounds as well.

Delaney in Delaney's role as president of the patrolmen's union and that Delaney contends left him "embarrassed, dejected, and humiliated." The email stated, in relevant part:

> As you know, during a meeting with the Chief involving union issues, I felt that your actions towards me were verging on insolent and disrespectful. I cautioned you on this behavior, telling you to be "careful" in your conversation and actions; that you were being insubordinate, and you responded that ...... [sic] I need to be "careful" . . . . You are more than welcome to state your opinions and facts but you should always do it in a respectful manner. You have the rights to not agree with what is being said, but according to the rules of this department you don't have the rights to be disrespectful when doing it.

We agree with the District Court that this email was "exceedingly mild." Because "not every critical comment -- or series of comments -- made by an employer to an employee provides a basis for a colorable allegation that the employee has been deprived of his or her constitutional rights," McKee, 436 F.3d at 170-71; see also Barton, 632 F.3d at 30, we affirm the grant of summary judgment to the defendants as to this claim.[5]

---

[5] Insofar as Delaney means to argue that the defendants created a hostile work environment that isolated him from his peers not only in retaliation for his filing the report with the AG Office but also for his union activity, that basis for challenging the grant of summary judgment as to his § 1983 claim based on his union activity fails largely for the reasons that his hostile work environment allegation failed to provide a basis for reversing the grant of summary judgment as to his § 1983 claim based on his filings of the AG report. See supra at n.4. We note, moreover, that Delaney does not explain in his briefing to us which of the

Where, as here, all federal claims in a case premised on federal question jurisdiction have been resolved against the plaintiff, "the Supreme Court has instructed that . . . 'the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  Nevertheless, because we conclude that none of Delaney's challenges to the District Court's grant of summary judgment as to his three pendent Massachusetts law claims presents a substantial legal question, we retain jurisdiction over these claims and affirm the District Court's grant of summary judgment to the defendants as to each of these claims.  See id.

Our review is de novo.  Sanchez-Figueroa, 527 F.3d at 213.  In undertaking it, we construe all inferences in the favor of the nonmoving party.  Id. at 211.

---

many actions that he lists in support of alleging that the defendants created a hostile work environment were taken because of his union activity.  And while one of those listed actions does appear to be clearly related to Delaney's union activity, Delaney does not argue in any developed way that this one incident alone suffices to create a genuine issue of triable fact as to whether the defendants created a hostile work environment.  Thus, this challenge to the summary judgment ruling as to this § 1983 claim fails, too.

The first of these three claims alleges that the defendants violated the Massachusetts whistleblower statute, which provides that "[a]n employer shall not take any retaliatory action against an employee because the employee . . . [d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes is in violation of a law."  Mass. Gen. Laws ch. 149, § 185(b)(1).  The District Court granted summary judgment to the defendants as to this claim because Delaney failed to comply with § 185's requirement that he had previously "brought the activity, policy or practice in violation of a law . . . to the attention of a supervisor of the employee by written notice and ha[d] afforded the employer a reasonable opportunity to correct the activity, policy or practice."  Id. at § 185(c)(1) (emphasis added).

Delaney contends that he provided the required written notice by giving his supervisor a copy of Department Rule 7.0 when he first complained to him about the ticketing policy and by telling him verbally at that time that he was opposed to the alleged policy.  But, even reading the record in the light most favorable to Delaney, we agree with the District Court that "[n]o stretch of the imagination can transform an oral remonstration and

a copy of a generic department rule into a 'written notice' of an objectionable 'policy or practice in violation of a law.'"[6]

To be sure, as Delaney points out and as the District Court recognized, there is an exception to the written notice requirement. If the employee's disclosure is "for the purpose of providing evidence of what the employee reasonably believes to be a crime," then the employee need not first provide his or her employer written notice. Id. at § 185(c)(2).

But while Delaney contends that the District Court erred in ruling that the exception does not apply here, we do not agree. Insofar as Delaney contends that this exception applies because he could have reasonably believed that the ticketing policy was unlawful or illegitimate, he is mistaken. The exception applies only if the report concerns criminal -- rather than merely unlawful or illegitimate -- conduct. Mass. Gen. Laws ch. 149, § 185(c)(2). Moreover, we agree with the District Court that it was not reasonable for Delaney to believe that, in establishing the new ticketing policy, the defendants violated the Massachusetts anti-bribery statute, Mass. Gen. Laws ch. 268A, § 2(b), which is the

---

[6] Delaney does separately contend that his supervisor "admitted that, if he received information form [sic] Delaney that the orders were illegal, he would have passed the information to Majenski or [Cutter] to follow-up." But, as the District Court's conclusion recognized, that fact does not bear on whether the notice that Delaney himself provided was in writing.

- 19 -

only criminal statute that he identified to the District Court as one that the ticketing policy violates.[7]

In contending that the District Court erred in this regard, Delaney points to our decision in United States v. Devin, 918 F.2d 280 (1st Cir. 1990). But there, we affirmed a conviction for racketeering based on a violation under chapter 268A, § 2(b), in which a private actor made weekly cash payments and gave expensive liquor to police officers to make traffic tickets "vanish" and other favors. Id. at 284. Here, by contrast, Delaney makes no allegation of cash payments by third parties or quid pro quo exchanges of any kind. Thus, Devin in no way shows that it would be reasonable to believe that the alleged ticketing quota system ran afoul of the bribery statute.

Delaney also cites to Wagner v. City of Holyoke, 241 F. Supp. 2d 78 (D. Mass. 2003), aff'd sub nom. Wagner v. City Of Holyoke, Mass., 404 F.3d 504 (1st Cir. 2005). But Wagner too, is of no help to Delaney's contention that he reasonably believed the bribery statute had been violated, as that case did not address

---

[7] Delaney's contention that he could reasonably have believed that the defendants had violated Massachusetts General Laws chapter 268, § 13B, which prohibits the "[i]ntimidation of witnesses, jurors and persons furnishing information in connection with criminal proceedings," fares no better. For, even if we were to assume this doubtful contention had merit, it is waived because he did not raise it below. Me. Green Party v. Me., Sec'y of State, 173 F.3d 1, 4 (1st Cir. 1999).

what may constitute a violation of that statute.  See id. at 97-99.

Finally, Delaney relies on Larch v. Mansfield Municipal Electrical Department, 272 F.3d 63 (1st Cir. 2001).  But, Larch addressed neither the criminal statute that Delaney believed was violated, M.G.L. 268A, § 2, nor the exception to the written reporting requirements that Delaney invokes.  See Larch, 272 F.3d at 67-69.  Thus, we affirm the grant of summary judgment as to this first pendent claim.

Delaney's second pendent claim alleges that the defendants violated his rights under the Massachusetts Civil Rights Act.  Mass. Gen. Laws Ann. ch. 12 §§ 11H, 11I.  But, in light of the grounds of our affirmance of the District Court's rejection of Delaney's § 1983 claims, this claim necessarily fails.  See Kelley v. LaForce, 288 F.3d 1, 10 (1st Cir. 2002).

That leaves only one other pendent claim -- Delaney's claim for intentional infliction of emotional distress.  Because we agree with the District Court that the misconduct that he alleges does not rise to a level that a reasonable jury could consider "atrocious" and "utterly intolerable in a civilized community," Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014), we affirm the grant of summary judgment as to this claim, too.

## IV.

Finally, we consider Delaney's challenge to the District Court's grant of the AG Office's motion to quash a deposition subpoena.  Motions to quash are governed by Federal Rule of Civil Procedure 45, which provides that a district court must "quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter."  Fed. R. Civ. P. 45(d)(3)(A)(iii).

The burden to demonstrate that a privilege applies "rests with the party resisting discovery."  FDIC v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000).  Our review is only for abuse of discretion, Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 66 (1st Cir. 2003),[8] and "we may reverse a district court 'only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'"  Saldana-Sanchez v. Lopez-Gerena, 256 F.3d 1, 8 (1st Cir. 2001) (quoting Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 192 (1st Cir. 2001)).

---

[8] Delaney's motion to compel dealt only with his request to depose the AG Office.  On appeal, however, Delaney purports to challenge both the motion to quash his request for a deposition and also the AG Office's assertion of privilege as to some documents it gave in response to Delaney's request for documents. But, as he did not challenge the assertion of privilege with regard to the request for documents below, that argument is waived.  Maine Green Party, 173 F.3d at 4.

Even if we were to assume prejudice, however, we see no basis for finding an abuse of discretion. Below, the AG Office argued that a deposition would be duplicative, given the discovery materials already produced. The District Court then granted the AG Office's motion to quash while stating:

> The Attorney General's (AG) Office represents that it previously provided plaintiff with 'all non-privileged documents [120 pages of records] in its possession' as requested in Schedule A of the Rule 30(b)(6) deposition subpoena, along with a privilege log of the withheld documents. The court has no reason to doubt the AG's claims of privilege, and, as a nonparty, governmental entity, the Office has gone above and beyond its obligations.

In now challenging that order, Delaney's only argument addressing duplication appears to rest on the assertion that a deposition would entitle him to inquire into matters not disclosed in the documents that he received during discovery. But, the materials not disclosed in the documents he received during discovery were, as the AG Office stated in its privilege log, privileged. And Delaney never challenged the AG Office's assertion of privilege regarding those documents. Moreover, to the extent Delaney premises his argument on the notion that he would have asked for other information than was contained in those privileged documents during a deposition, that argument fails to persuade because he does not identify any such information that he would have sought.

Thus, Delaney has identified no way in which the District Court abused its discretion in denying the motion to quash. Accordingly, his challenge to this ruling fails.

## V.

For the foregoing reasons, the District Court's decision is **affirmed**.