# United States Court of Appeals
## For the First Circuit

No. 17-1512

MARTHA ISABELLE BONILLA-RAMIREZ,

Plaintiff, Appellant,

v.

MVM, INC., d/b/a MVM Security, Inc., a/k/a MVM International
Security, Inc.; CHRISTOPHER MARTIN MCHALE,

Defendants, Appellees,

JEH CHARLES JOHNSON, acting in his individual capacity; LORETTA
E. LYNCH, acting in her individual capacity; KIRSTJEN NIELSEN,
acting in her official capacity; ELPIDIO NUNEZ; JEFFERSON B.
SESSIONS, III, acting in his official capacity; UNITED STATES
DEPTARTMENT OF HOMELAND SECURITY; UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; UNITED STATES DEPARTMENT OF JUSTICE,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Humberto Cobo-Estrella, with whom Cobo Estrella Law
Office was on brief, for appellant.
Ana B. Rosado-Frontanés, with whom Schuster Aguiló LLC
was on brief, for appellees.

September 14, 2018

**BARRON**, **Circuit Judge**.    Martha Bonilla-Ramirez ("Bonilla") is a former employee of MVM, Inc. ("MVM"), which is a private security company that is based in Puerto Rico and provides security services to the United States Immigration and Customs Enforcement ("ICE").   Following Bonilla's termination from MVM in 2014, she brought a variety of federal and Puerto Rico law claims against her former employer and other defendants in the United States District Court for the District of Puerto Rico.   The District Court dismissed all but her claims against MVM under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq., and related Puerto Rico laws, and then granted summary judgment to MVM as to those claims.   Bonilla now appeals that summary judgment ruling, which we affirm.

## I.

While working for MVM, Bonilla was assigned to the Luis Muñoz Marín International Airport in San Juan, Puerto Rico (the "airport").   Her responsibilities included providing security for detainees in ICE custody at ICE's detention facility in the airport.

On June 14, 2014, Bonilla reported to her supervisor an incident at the airport that occurred that same day and that involved a dispute between her and another MVM employee, Abraham Ortiz ("Ortiz").   Bonilla's supervisor asked her to produce a written account of what had occurred.   In her written statement to

her supervisor, which she submitted on June 20, Bonilla complained that Ortiz was ordering her around, requesting that she do all of their work, "calling [her] out for using her [personal] cellphone," and generally acting like her supervisor. Ortiz, for his part, sent a letter on June 18 to a supervisor at MVM in which he complained, among other things, about Bonilla having directed foul language toward him during the June 14 incident.

On June 24, three supervisors met with Bonilla and Ortiz about the incident. One of the supervisors wrote a report following that meeting, and MVM then looked further into the complaints that Bonilla and Ortiz had lodged against each other. MVM asserts that it determined from its inquiry that immediately prior to the June 14 incident between Bonilla and Ortiz, Bonilla had "[abandoned her post] for approximately two hours" with another MVM employee, Alexandra Rodriguez ("Rodriguez"), who was off duty. MVM also asserts that through this inquiry it determined, based on its analysis of an airport security video, that while away from her post with Rodriguez, Bonilla had engaged in conduct known as "piggybacking," which involves following another person through a secured door without both swiping one's airport badge and entering one's personal code on a keypad. Finally, MVM asserts that its inquiry showed that Bonilla had used her personal cellphone during work hours.

On June 24, 2014, MVM reported these findings to ICE. On July 10, 2014, MVM cited Bonilla for committing multiple "security violations," which included abandoning her post, using her personal cell phone, and engaging in piggybacking. That same day, MVM gave her a verbal warning, took away her airport badge, and notified her that she was being reassigned to another post, not at the airport.

On August 12, 2014, Bonilla filed a charge of gender discrimination and retaliation against MVM with the United States Equal Employment Opportunity Commission ("EEOC"). Bonilla's EEOC charge was faxed to MVM that same day. That evening, ICE sent an email to Jay Vergel ("Vergel"), MVM's Operations Manager, requesting that Bonilla be immediately removed from providing services for ICE under its contract with MVM. Minutes after Vergel received that email, he instructed his team to make sure that she was "removed" that day. That same evening, MVM called Bonilla and asked her to report to work the next day, August 13, 2014. Bonilla did not do so, but she did report to work on August 14, when she was informed that she was terminated, effective August 13.

On May 14, 2015, Bonilla filed suit against MVM and other defendants in the District of Puerto Rico in which she brought a variety of claims under federal and Puerto Rico law. The District Court dismissed most of those claims, such that her only remaining claims were her Title VII claims against MVM and her discrimination

and tort claims against that same defendant.[1]  The District Court then granted MVM's motion for summary judgment on these remaining claims.

Bonilla now appeals the District Court's ruling granting summary judgment to MVM as to each of Bonilla's three distinct Title VII claims, which are for, respectively, creating a hostile work environment, gender-based disparate treatment, and retaliation, and as to each of her related Puerto Rico law claims. We review a grant of summary judgment de novo, affirming the grant of summary judgment where, drawing all inferences in favor of the nonmoving party, the record discloses no genuine issues of material fact and demonstrates that the moving party is entitled to judgment as a matter of law.  See Delaney v. Town of Abington, 890 F.3d 1, 5 (1st Cir. 2018).

## II.

### A.

We start with Bonilla's challenge to the grant of summary judgment to MVM on her hostile work environment claim, which she

---

[1] The previously dismissed claims include the federal and Puerto Rico law claims against U.S. Immigration and Customs Enforcement, the U.S. Department of Homeland Security, the U.S. Department of Justice, various federal officials, and MVM's General Counsel Christopher McHale ("McHale"), as well as a Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962, 1964, claim against MVM.

bases on the alleged conduct of Ortiz. We may dispose of this challenge quickly.

The District Court gave a number of reasons for granting MVM summary judgment as to this claim, including that Bonilla had failed to exhaust her administrative remedies because she had not raised this claim in the charge that she filed with the EEOC on August 12, 2015. Bonilla, however, does not address this ground at all in her briefing to us, and so she has waived any challenge to it. See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015). Accordingly, we affirm the grant of summary judgment as to this claim.

**B.**

We next address Bonilla's challenge to the District Court's grant of summary judgment to MVM on her claim under Title VII that MVM unlawfully subjected her to disparate treatment because of her gender by disciplining her in the way that it did. Because Bonilla relies on circumstantial rather than direct evidence of discrimination to support this claim, the District Court applied the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), in ruling on MVM's summary judgment motion.[2]

---

[2] Below, and in line with MVM's summary judgment briefing, the District Court also applied the McDonnell Douglas framework to assess whether summary judgment was appropriate. In applying this framework, the District Court noted that not only did Bonilla "not

- 7 -

The McDonnell Douglas framework requires a plaintiff, in order to survive summary judgment, to "first establish a prima facie case by showing that: (1) she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person," Burns v. Johnson, 829 F.3d 1, 9 n.8 (1st Cir. 2016) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000)).  If the plaintiff establishes a prima facie case, then she is entitled to an inference of discrimination. Caraballo-Caraballo v. Corr. Admin., 892 F.3d 53, 57 (1st Cir. 2018).  And thus, at that point, "the burden of production then 'shifts to the employer to state a legitimate, nondiscriminatory reason for the adverse employment action.'"  Burns, 829 F.3d at 9 n.8 (quoting Santiago-Ramos, 217 F.3d at 54).  If the defendant meets that burden of production, then the plaintiff bears the ultimate burden of proof to show that the employer's proffered nondiscriminatory reason for the adverse employment action was a

argue that any other test applies," see, e.g., Burns, 829 F.3d at 9 n.9 (describing the "mixed-motives theory" that "applies to cases where multiple motives lie behind an adverse employment action"), but also "the record d[id] not evince multiple motives."  On appeal, Bonilla cursorily suggests that another framework, which applies to a mixed-motives theory of discrimination, may also be applicable.  However, as this argument was neither presented below, see United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992), nor developed on appeal, see Schneider v. Local 103 I.B.E.W. Health Plan, 442 F.3d 1, 3 (1st Cir. 2006), we do not consider it.

pretext and that the employer did intentionally discriminate against her because of her sex. See id.

We assume, as the District Court did, that Bonilla has successfully established a prima facie case for this claim under McDonnell Douglas. And, we conclude, as the District Court did, that MVM met its burden to assert a legitimate nondiscriminatory reason for the adverse employment actions that Bonilla contends that MVM took against her. To do so on summary judgment, MVM needed only to produce "enough competent evidence, taken as true, to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action[.]" Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997) (emphasis in original). And, as the District Court properly found, MVM asserted that Bonilla incurred several security violations while performing her duties, which included abandoning her post, using her cell phone while on duty, and piggybacking through secured airport doors. According to MVM, these violations were prohibited by both the MVM and ICE Standards of Conduct. Thus, MVM has met its burden under McDonnell Douglas to put forth a legitimate, nondiscriminatory reason for its adverse employment actions against Bonilla. Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 449 (1st Cir. 2009) (noting that code of conduct violations are "legitimate, non-discriminatory reasons" for termination).

There is still the question, though, whether Bonilla has shown that there is a genuine issue of triable fact as to whether MVM's proffered nondiscriminatory reasons for its actions are pretextual. And it is at this step that the District Court concluded that Bonilla came up short. We agree.

In contending otherwise, Bonilla rightly points out that evidence of an employer's disparate treatment of similarly situated male employees can support a finding that a proffered nondiscriminatory basis for an employer taking an adverse employment action against a female employee is a pretext for sex discrimination. See Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)). But, contrary to Bonilla's contention, the record simply does not provide a basis from which a reasonable jury could conclude that the three male employees whom Bonilla identifies as having been similarly situated to her but not similarly disciplined for their misconduct were in fact similarly situated to her.

The record shows that Bonilla was terminated after ICE had requested that MVM prevent her from providing services to ICE under its contract with MVM. Nothing in the record indicates, however, that ICE made any similar request with respect to any of the three male comparators that she identifies.

- 10 -

Bonilla does also contend that she was subject to disparate treatment relative to these three male employees through other adverse actions that MVM took against her. In particular, she points to the fact that MVM removed her airport badge and reassigned her to another post under the ICE contract for her alleged misconduct. But Bonilla acknowledges MVM's contention that it removed her airport badge, and in consequence of that removal reassigned her to a post not at the airport, because of conduct by Bonilla that it had concluded constituted a "security violation," in the form of "piggybacking." Yet Bonilla identifies no evidence to indicate that the three male employees that she contends are similarly situated to her engaged in misconduct that constituted a "security violation." In fact, the only other employees in the record who were cited as engaging in conduct that ICE or MVM considered to be a "security violation" -- David Santiago ("Santiago"),[3] a male, and Rodriquez, a female off duty detention officer involved in the same incident as Bonilla -- lost their airport badges and were terminated after ICE requested that they be removed from performing duties under the ICE/MVM contract due to these security violations.[4]

_____

[3] Santiago, who was also an MVM detention officer, was alleged to have failed to store his MVM-authorized weapon in a designated area before accessing a secured and restricted area while on duty and performing a transportation detail on June 14, 2014.

[4] In consequence of her conduct on June 14, which MVM described as "access[ing] airport security doors" while off-duty and

- 11 -

We thus conclude that Bonilla's challenge to the District Court's pretext ruling fails.  And, accordingly, we affirm the grant of summary judgment to MVM as to Bonilla's disparate treatment Title VII claim.

## c.

We turn, then, to Bonilla's remaining claim under Title VII, which is for retaliation.  To demonstrate retaliation in violation of Title VII, "a plaintiff must show that (i) she undertook protected conduct, (ii) she suffered an adverse employment action, and (iii) the two were causally linked." Xiaoyan Tang v. Citizens Bank, 821 F.3d 206, 218-19 (1st Cir. 2016) (citing Noviello v. City of Bos., 398 F.3d 76, 88 (1st Cir. 2005)).

We begin with Bonilla's contention that she has met her burden at summary judgment to show that there is a genuine issue of triable fact as to whether MVM retaliated against her for her

engaging in "piggybacking" by giving Bonilla "access through secured doors," MVM suspended Rodriguez from work for five days without pay and took away her airport badge.  At the time, Rodriguez's disciplinary record included three disciplinary actions in the last year and a prior suspension from work related to one of those actions.  Santiago, also based in part on his past disciplinary record which included one disciplinary action -- a written reprimand -- in the last year, was suspended by MVM from work for two days without pay and lost his airport badge.  However, like Bonilla, both were eventually terminated (on the same day as Bonilla) after ICE informed MVM that, because of their conduct, Bonilla, Rodriguez and Santiago should all be "removed from the contract immediately."

- 12 -

EEOC filing. We agree, however, with the District Court's ruling that she has not.

In arguing otherwise, Bonilla points to the fact that MVM decided to terminate her soon after she had filed her EEOC complaint. But MVM's decision to do so at that time is "readily explain[ed]" by the timing of ICE's request that she be removed from the contract, as MVM received that request on the same day that she filed her complaint and MVM then removed her the next day. See Micheo-Acevedo v. Stericycle of P.R., Inc., 897 F.3d 360, 366 (1st Cir. 2018). And Bonilla identifies no evidence to provide a basis from which a jury could conclude that MVM prompted ICE to make the request at that time due to Bonilla's EEOC filing. Thus, we do not see how the proximity of that termination decision to her filing of the EEOC complaint, without more, can provide a basis for permitting this claim to survive summary judgment.

Bonilla does also argue that MVM retaliated against her through adverse employment actions short of termination. She points in particular to MVM's July 10 citation stripping her of her security badge and reassigning her to a non-airport facility. Notably, however, her protected decision to file her EEOC complaint occurred after July 10. Thus, MVM's decision to strip her of her security badge and to reassign her could not have been retaliation for that protected conduct.

- 13 -

That leaves only, then, the question of whether her internal complaints to MVM that occurred on or before July 10 constituted protected conduct, such that the adverse employment actions taken on July 10 could reasonably be deemed to have been taken in retaliation for that protected conduct. The District Court concluded, however, that the internal complaints that Bonilla allegedly made prior to July 10 did not constitute protected activity,[5] and Bonilla does not develop any argument on appeal as to why those complaints may be properly characterized as having protested or opposed "statutorily prohibited discrimination" as opposed to merely workplace behavior of which she disapproved. Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (quoting Cruz v. Coach Stores Inc., 202 F.3d 560, 566 (2nd Cir. 2000)). Thus, we view any argument that such complaints constitute protected activity to be waived for lack of development. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (noting that arguments undeveloped on appeal are waived).

For these reasons, we affirm the District Court's ruling granting MVM summary judgment as to Bonilla's Title VII retaliation claim.

---

[5] Specifically, the District Court pointed to the complaints that Bonilla raised about Ortiz during her June 24 meeting with three MVM supervisors. Bonilla alludes to earlier complaints in her brief, but similarly does not address why these complaints would qualify as protected activity.

**D.**

Finally, Bonilla appears also to be appealing the District Court's grant of summary judgment for the Puerto Rico law claims that "correspond[]" to her Title VII claims.[6] But, as Bonilla makes no argument that her Puerto Rico law claims survive if her Title VII claims do not, we affirm the District Court's summary judgment ruling dismissing Bonilla's claims against MVM pursuant to Puerto Rico Law 80 (Unjust Discharge Act), P.R. Laws Ann. tit. 29 §§ 185a, et seq.; Puerto Rico Law 100 (anti-discrimination statute), P.R. Laws Ann. tit. 29 §§ 146, et seq.; and Puerto Rico Law 115 (anti-retaliation statute), P.R. Laws Ann. tit. 29 §§ 194, et seq.[7]

**III.**

We, therefore, **affirm** the District Court's ruling granting MVM's motion for summary judgment.

---

[6] Bonilla expressly does not contest the District Court's summary judgment ruling concerning her claims against MVM under Puerto Rico Law Articles 1802 and 1803, P.R. Laws Ann. tit. 31 §§ 5141-42.

[7] To the extent Bonilla also means to argue that her Puerto Rico law claims survive even if her Title VII claims do not, we deem any such argument waived for lack of development. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).