# United States Court of Appeals
## For the First Circuit

No. 20-1901

MIGUEL RODRÍGUEZ-SEVERINO,

Plaintiff, Appellant,

v.

UTC AEROSPACE SYSTEMS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

Before

Gelpí, Lipez, and Thompson,
Circuit Judges.

Juan M. Frontera-Suau, with whom Frontera Suau Law Offices, PSC, was on brief, for appellant.
Miguel A. Rivera-Arce, with whom McConnell Valdés LLC was on brief, for appellee.

October 27, 2022

**GELPÍ, Circuit Judge.** Plaintiff-Appellant Miguel Rodríguez-Severino ("Rodríguez-Severino") was an employee of Defendant-Appellee UTC Aerospace Systems ("UTC") in its Environmental, Health and Safety ("EH&S") department at its manufacturing plant in Santa Isabel, Puerto Rico. This appeal arises from an incident during a March 2016 training, when Rodríguez-Severino alleges that a contractor giving the training made a sexually explicit joke and that his supervisor, Kenneth Cariño ("Cariño"), failed to stop the contractor and instead joined in. Rodríguez-Severino filed a complaint with the company's ombudsman and then filed several complaints with two agencies, alleging retaliatory behavior in response by UTC, and Cariño in particular, which forms the basis for his retaliation claim under Title VII of the Civil Rights Act of 1964 ("Title VII"). The district court granted UTC's motion for summary judgment on all claims. Finding no error in the district court's decision, we affirm.

## I. Background

When reviewing a district court's grant of summary judgment, we consider the facts in the light most favorable to the non-moving party, Rodríguez-Severino, and draw reasonable inferences in their favor. CMI Capital Mkt. Inv., LLC v. González-Toro, 520 F.3d 58, 61 (1st Cir. 2008). The factual premise for this appeal is somewhat complicated by Rodríguez-Severino's

- 2 -

alleged failure to comply with the district court's Local Rule 56, an "anti-ferret rule," in his opposition to UTC's motion for summary judgment. See D.P.R. Civ. R. 56. Determining that Rodríguez-Severino failed to counter UTC's statement of material facts, the district court deemed the uncontroverted facts admitted under Local Rule 56(e), which provides that facts contained in a statement of material facts "shall be deemed admitted unless properly controverted." D.P.R. Civ. R. 56(e). The district court also declined to consider 100 additional facts asserted by Rodríguez-Severino in his opposing statement of material facts because it concluded that these facts were not, as required by Local Rule 56(e), supported by specific citations to evidence in the summary judgment record. For the reasons we explain infra, we find no abuse of discretion in the district court's "deeming" order, and accordingly, we review the facts as set forth in UTC's statement of material facts. See CMI Capital Mkt. Inv., LLC, 520 F.3d at 61.

Rodríguez-Severino, a member of the Air National Guard, was born in the Dominican Republic and began living in Puerto Rico when he was approximately eight years old. He began working for UTC as an EH&S Specialist in the company's EH&S department in its manufacturing facility located in Santa Isabel, Puerto Rico in June 2015. UTC designs and manufactures aerospace components. The EH&S department is responsible for monitoring and ensuring the

health and safety of all UTC employees. Cariño, the EH&S department manager, was his supervisor during all relevant times. Rodríguez-Severino, like other new hires, was initially assigned to the first work shift, which ran from 8:00 AM - 5:00 PM.

In March 2016, Rodríguez-Severino attended a training that was being offered to members of the EH&S department. There, he alleged that the contractor giving the training made a sexually explicit joke and that Cariño failed to stop the contractor from doing so and instead joined in the joke, laughed, and repeated the joke.[1] Shortly thereafter, Rodríguez-Severino filed a confidential complaint through UTC's ombudsman program relaying the incident. In April 2016, Eddie Del Toro ("Del Toro"), a Human Resources ("HR") manager, was assigned to conduct an investigation of the internal complaint. He was not provided the name of the employee who had made the complaint and began an investigation of the events that transpired during the training. As part of the investigation, Cariño was interviewed, but was not informed of who had filed the complaint,[2] and was cleared of any wrongdoing. On June 30, 2016,

---

[1] Translated from Spanish, the inappropriate comment referring to the prohibition on carrying hazardous material through a tunnel in Puerto Rico was: "You know you cannot go in the tunnel, don't go in the tunnel. You don't take it up the tunnel, or can't put it in."

[2] We acknowledge Rodríguez-Severino's assertion on appeal that due to the nature of the investigation, it was not difficult for Cariño to identify who had filed the confidential complaint. We discuss this contention in more detail infra, ultimately concluding that Cariño did not learn a complaint had been made

- 4 -

Rodríguez-Severino informed Del Toro that it was he who had brought a complaint to the ombudsman. Del Toro did not share this information with any other UTC employee, and Rodríguez-Severino did not tell anybody else that he had filed the complaint.

## A. First EEOC Charge

On November 7, 2016, Rodríguez-Severino filed a charge with the Equal Employment Opportunity Commission ("EEOC"). We will refer to this as the first EEOC charge. In it, he alleged color and national origin discrimination by UTC, and Cariño specifically, in addition to retaliation for filing a complaint with the ombudsman. The charge summarized the acts that Rodríguez-Severino considered to be in retaliation for bringing an ombudsman complaint. One of the alleged retaliatory acts was a performance evaluation that took place in April 2016 where Cariño gave Rodríguez-Severino a score of "progressing." Rodríguez-Severino also alleged that there was an activity at the Occupational Safety and Health Administration ("OSHA") offices in San Juan, Puerto Rico to which all other EH&S professionals were invited, except for him. UTC alleges Rodríguez-Severino was excluded because he was working the second shift at the time, which ran from 2:00 PM to 10:00 PM, and the event took place during the first shift. Rodríguez-Severino alleged in the first EEOC charge that though he

_____

about the joke during training until Rodríguez-Severino filed the first EEOC charge.

- 5 -

requested to attend, he was told that he had to cover the second shift and could not leave that shift unattended.

Rodríguez-Severino further alleged retaliation in his change to a newly created third shift, which ran from 10:00 PM to 6:00 AM. He expressed concern to Cariño and Del Toro that the change in shift would affect his ability to work on certain projects but ultimately, the change was made and he began working on the third shift in June 2016. UTC contends that he was moved to the third shift because he was the employee with the least seniority at the time.

Additionally, Rodríguez-Severino alleged further retaliation through email. Rodríguez-Severino sent an email in May 2016 to his co-workers, supervisors, and the General Manager in which he suggested various areas in which the company was in need of corrective action, which led another employee in the EH&S department to respond with a contrasting opinion. Cariño responded with an email to both Rodríguez-Severino and the other employee who had responded asking that such discussions be held internally within the EH&S department rather than over group email. Rodríguez-Severino alleged in the first EEOC charge that this made him feel embarrassed and disrespected. He additionally alleged a "pattern of retaliation and harassment" between himself and Cariño where he was excluded, treated disrespectfully, and singled out for mistreatment.

As a member of the Air National Guard, Rodríguez-Severino often had to attend weekend trainings which required him to take time off. He alleged that Cariño forgot about these weekends and continually asked about them and what they were, and commented that they took place often. Nevertheless, Rodríguez-Severino was always able to attend said trainings and admitted it did not affect his salary or benefits to do so, even when he started working the third shift.

UTC alleged that Rodríguez-Severino's overall performance was deficient. It alleged that Rodríguez-Severino failed to properly request his time off, and took days off that were not authorized or that had been explicitly denied. It also alleged that Rodríguez-Severino failed to communicate adequately and did not maintain the type of communication with the department that was expected of him. Finally, Rodríguez-Severino was insubordinate on various occasions and purposefully disregarded his supervisor's instructions.

For example, at the end of October 2016, Cariño attempted to schedule a meeting with Rodríguez-Severino and sent him emails on October 28, 2016 and November 1, 2016 requesting such a meeting to take place at the end of Rodríguez-Severino's shift, the third shift. Rodríguez-Severino did not answer or attend. Though the initial meetings were not compulsory, various meetings were then scheduled with Rodríguez-Severino, Cariño, and the HR director

which were labeled compulsory. Rodríguez-Severino declined to attend those meetings and was not available on his corporate cell phone. He was informed that he would not be allowed to return to work until the meeting was held. The meeting was eventually held on November 10, 2016 after which Rodríguez-Severino was cleared to return to work. In the meeting, Rodríguez-Severino, Cariño, and the HR director discussed Rodríguez-Severino's performance and the difficulty with scheduling the meeting, as well as his expected hours on the third shift.

In July 2017, the EEOC issued a dismissal of the first EEOC charge, finding no violation.

## B. Second EEOC Charge

In January of 2017, Rodríguez-Severino filed a second charge before the EEOC, which we will refer to as the second EEOC charge. In it, he alleged retaliation on the part of Cariño because of his complaint with the ombudsman. He repeated many of the allegations appearing in his first charge, as well as harassment by Cariño in December of 2016, beginning when Rodríguez-Severino requested time off, which was approved, in November 2016. On the day that his time off was scheduled to begin, Rodríguez-Severino informed Cariño that he would need to reschedule for mid-December. Though the leave was initially approved, Cariño then had to shift Rodríguez-Severino's days off to a week earlier due to other requests for time off that had already been approved. On

the day that Rodríguez-Severino was supposed to return to work, he notified Cariño that he would be out sick for eight days, coinciding with the week for which he had originally requested leave. Rodríguez-Severino alleged that Cariño harassed him over email in the days leading up to his vacation leave by sending him work-related emails. The outcome of this second EEOC charge is undisclosed in the record.

## C. <u>VETS Charge</u>

In March 2017, Rodríguez-Severino brought a charge before the Office of the Assistant Secretary for Veteran's Employment and Training ("VETS") of the federal Department of Labor, alleging discrimination in violation of his rights under the Uniformed Services Employment and Reemployment Rights Act ("USERRA").[3] In it, he described the various incidents of discrimination and retaliation described above, specifically regarding the meeting in 2016 that he failed to attend, alleging without further information that Cariño's actions were discriminatory and retaliatory due to his military status. He also described additional incidents that he alleged were retaliatory. First, that Cariño requested Rodríguez-Severino

---

[3] The district court deemed this claim waived and abandoned at the summary judgment stage. Rodríguez-Severino does not raise the issue again on appeal. Therefore, we also consider the claim waived before this court and limit our discussion of the underlying facts.

resend his military drill schedule. Second, that Cariño requested Rodríguez-Severino work during the second shift on Friday, March 3, 2017 when he had already worked the third shift the night before. Rodríguez-Severino failed to report to work for said shift. Following an investigation, in June 2017, the VETS office issued a letter stating that there was no evidence supporting Rodríguez-Severino's allegations.

## D. **Third EEOC Charge**

In June 2017, Rodríguez-Severino filed a third EEOC charge alleging retaliation. He repeated many of the incidents that were included in the VETS charge and relayed an incident that took place in March 2017. On that occasion, Rodríguez-Severino was on a shift when a piece of equipment, the Remstar Storage, had technical difficulties. He contacted outside contractors to repair the machine, but then refused to allow them to perform the work when they arrived because they lacked the required OSHA certifications needed to perform the work in a confined space, where the machine was located. However, there existed a "Confined Space Inventory and Inspection Sheet" which allowed the equipment to be reclassified, permitting the work to continue without the OSHA certification. Rodríguez-Severino neglected to consult the sheet and did not contact Cariño to ask for his advice. Instead, Cariño was contacted by the manufacturing supervisor who informed him that Rodríguez-Severino was not following the proper protocol.

Cariño then contacted Rodríguez-Severino to resolve the problem. Following a report by Rodríguez-Severino about the incident, Cariño's behavior was investigated by Myrna Vélez ("Vélez"), HR manager, who determined that he had acted appropriately.

Moreover, Rodríguez-Severino made various other allegations regarding retaliation by Cariño. He alleged that all employees except for him were allowed to leave after completing an audit, though he had not been working on the audit. He further alleged that he was not allowed to take his birthday off from work, and that he was not allowed to take part in certain office activities that were offered during the first shift when he was working the third shift. Finally, he alleged that he was barred from returning to work after being told that he needed to submit certain medical documentation after completing medical treatment, as was required by company policies. After filing his third EEOC charge, Rodríguez-Severino received a right-to-sue letter in July 2017.

## E. Transfer to OPEX

Following these incidents between Rodríguez-Severino and Cariño, HR remained involved. Due to the difficult working relationship between the two men, HR decided that Rodríguez-Severino would be transferred to the Operational Excellence Department ("OPEX"), a division of UTC, where he would continue to work as a EH&S professional, but with a different supervisor. The

transfer would give him an opportunity to improve his performance as an EH&S professional, and would also give him a fresh start with a new supervisor. Rodríguez-Severino maintained his same salary and benefits in his new position but began working the first shift. He continued to provide support to the EH&S department in this role and at the time the lawsuit commenced, he was still an employee of UTC.

## F. **Procedural History**

Rodríguez-Severino brought this action in the District of Puerto Rico in October 2017, alleging retaliation under Title VII, 42 U.S.C. § 2000e-2 et seq., discrimination and retaliation under USERRA, 38 U.S.C. § 4301 et seq., and violations of Puerto Rico Law 115 ("Law 115"), P.R. Laws Ann. tit. 29, § 194a. He received a right-to-sue letter on July 6, 2017 following the filing of his third EEOC discrimination charge and filed the complaint within the ninety-day period. On January 23, 2020, following discovery, UTC moved for summary judgment. On July 31, 2020, the district court granted the motion for summary judgment and dismissed the case with prejudice, finding that Rodríguez-Severino failed to make a prima facie showing of retaliation, and (in the alternative) failed to rebut UTC's explanations for why the behavior in question was non-discriminatory in nature. The district court emphasized that Rodríguez-Severino's opposition to UTC's statement of uncontested material facts was noncompliant

with Local Rule 56, with many of his attempts to deny or qualify facts either being irrelevant or consisting of speculation, generalities, improbable inferences, and conclusory assertions. As such, the district court "rejected almost all of [Rodríguez-Severino's] denials of [UTC's] proffered facts." Rodríguez-Severino timely appealed.

## II. Discussion

## A. Local Rule 56

Rodríguez-Severino first argues on appeal that the district court was incorrect when it concluded that his statement in opposition to UTC's statement of uncontested material facts was noncompliant with Local Rule 56 and alleges that he did properly controvert UTC's factual allegations. Specifically, Rodríguez-Severino asserts that the district court incorrectly disregarded his citations to his EEOC charges which were made under penalty of perjury.

## 1. Standard of Review

In the Local Rule 56 context, at the summary judgment stage, "we review the district court's deeming order for abuse of discretion." P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010) (citing CMI Capital Mkt. Inv., LLC, 520 F.3d at 63). Owing to the district court's proximity to both the case itself and the local rules, "[t]his entails 'a special degree of deference . . . to [the] court's interpretation of its own local

rules.'" Id. (second and third alterations in original) (quoting Crowley v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir. 2004)).

## 2. **Analysis**

Local Rule 56 of the United States District Court for the District of Puerto Rico requires that a motion for summary judgment "be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." D.P.R. Civ. R. 56(b). The party opposing the motion for summary judgment must then "submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. 56(c). The facts themselves must be supported by "a citation to the specific page or paragraph of identified record material supporting the assertion." Id. 56(e). Importantly, the court may disregard facts if they are not supported by such a citation. Id. Lastly, facts contained either in the supporting or opposing statement of material facts if supported by record citations "shall be deemed admitted unless properly controverted." Id.

"When the nonmovant fails to comply with the standards of Local Rule 56, 'a district court is free, in the exercise of

- 14 -

its sound discretion, to accept the moving party's facts as stated.'" Advanced Flexible Cirs., Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d 510, 521 (1st Cir. 2015) (quoting Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007)). Said rule, aptly referred to as an "anti-ferret rule," is intended to protect the district court from ferreting through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto to the court. CMI Capital Mkt. Inv., LLC, 520 F.3d at 62 ("The purpose of this rule is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute."). We have emphasized before the importance of following said local rule and have implored litigants to comply, or ignore it "at their peril." Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007) (quoting Cabán Hernández, 486 F.3d at 7).

In evaluating Rodríguez-Severino's challenge to the district court's deeming order under Local Rule 56, we are mindful that "Local Rule 56 is in service to Federal Rule of Civil Procedure 56." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). Under Federal Rule of Civil Procedure 56, "a party cannot successfully oppose a motion for summary judgment by resting 'upon mere allegations or denials of his pleading.'" Garmon v. Nat'l R.R. Passenger Corp.,

844 F.3d 307, 312 (1st Cir. 2016) (alteration in original) (quoting Pina v. Child.'s Place, 740 F.3d 785, 795 (1st Cir. 2014)). "[M]ere allegations are not entitled to weight in the summary judgment calculus." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 3 (1st Cir. 2010). The nonmoving party must instead marshal sufficient evidence to show that a genuine issue of material fact exists. Cherkaoui v. City of Quincy, 877 F.3d 14, 24 (1st Cir. 2017). "Like [Federal] Rule [of Civil Procedure] 56 itself, [Local Rule 56] makes clear that its focus is on facts, not speculation or argumentation." Tropigas de P.R., 637 F.3d at 56-57. Moreover, "[u]nder federal law, an unsworn statement signed under penalty of perjury may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment." Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 689 (1st Cir. 1993) (citing 28 U.S.C. § 1746); accord Ramírez Rodríguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 82 (1st Cir. 2005).

The district court found that Rodríguez-Severino's opposition to UTC's statement of uncontested material facts was procedurally noncompliant with Local Rule 56 for several reasons. First, the district court found that many of Rodríguez-Severino's responses failed to contradict the proffered facts, included extraneous and irrelevant details, and consisted of speculation and conclusory assertions. Additionally, the district court found

- 16 -

that many of the qualifications and denials were not properly supported by a citation. Some had no record citation at all, while others provided a citation to a document or regulation but "failed to point to the relevant page and line" that supported the assertion. Rodríguez-Severino's opposition also included his own statement of 100 material facts not in controversy, as permitted by Local Rule 56(c) ("The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule."). The district court rejected almost all of these facts, finding that most were supported by allegations contained in his complaint or citations to his EEOC charges, both of which the court found consisted of allegations rather than direct evidence. Finally, the district court disagreed with Rodríguez-Severino's contention that, based on Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), UTC cannot support its statement of material facts with self-serving statements from interested witnesses such as those UTC submitted from Cariño, Del Toro, and HR Associate Director Myrna Vélez.

Here, we see no abuse of discretion in the district court's conclusion that Rodríguez-Severino's opposition to the statement of uncontested material facts filed by UTC in moving for summary judgment was procedurally noncompliant with Local Rule 56. Accordingly, we affirm the district court's decision to deem UTC's

statement of material facts admitted. As the district court found, some of Rodríguez-Severino's factual assertions did not actually oppose the truth of the statement UTC offered, were unaccompanied by "a citation to the specific page or paragraph of identified record material supporting the assertion," D.P.R. Civ. R. 56(e), or cited to a lengthy Federal Regulation without providing a more specific location, see Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) ("[F]ailure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (emphasis added)). In addition, some of Rodríguez-Severino's denials and qualifications cited to part of the summary judgment record that were either not on point, conclusory, or speculative.

We offer some examples to illustrate our conclusion, drawn from Rodríguez-Severino's opposition to UTC's statement of uncontested facts. At paragraph 69 of its statement of uncontested facts, UTC stated that Cariño only learned of the specifics of the internal ombudsman complaint and who had brought it after Rodríguez-Severino filed his first EEOC charge in November of 2016. Rodríguez-Severino denied this statement, citing to his ombudsman complaint and his own statement of uncontested material facts. But none of the information at these citations supports the fact that Cariño knew of the ombudsman complaint and that Rodríguez-

- 18 -

Severino had filed it before Cariño knew about the first EEOC charge. His citation to the ombudsman complaint itself does not establish that Cariño knew it was filed or who had filed it -- indeed, the ombudsman form states that it is a "confidential communication channel." Rodríguez-Severino's citation to paragraphs 32-56 of his own statement of material facts not in controversy is also unsupportive. The facts in that section recount Cariño's treatment of Rodríguez-Severino, the creation of the third shift, and that Rodríguez-Severino informed Del Toro that he had filed the ombudsman complaint, but they do not establish that <u>Cariño</u> learned of Rodríguez-Severino's confidential ombudsman complaint prior to the first EEOC charge.

Another example: At paragraph 90 of its statement of uncontested material facts, UTC stated that Rodríguez-Severino was given two weeks to consider his assignment to the third shift, and during that time he did not discuss his transfer with Cariño or inquire about the reasons for the creation of the third shift. Rodríguez-Severino denied this fact, citing to his own statement of material facts at paragraphs 34-54. Though these paragraphs discuss the creation of the third shift and Rodríguez-Severino's assignment to it, they do not provide any information about conversations related to this assignment or inquiries regarding the creation of a third shift.

- 19 -

We offer a final example. At paragraph 63 of its statement of uncontested material facts, UTC stated that Cariño was not informed that someone had filed a complaint when he was interviewed by HR, rather he was told that he was being interviewed as part of an investigation. Rodríguez-Severino denied this fact, citing only to his ombudsman complaint. This confidential, internal complaint and the facts contained therein do not refute UTC's contention that Cariño did not know he was being interviewed because of a complaint filed against him.

The above examples illustrate how Rodríguez-Severino failed to properly controvert UTC's statement of uncontested facts. He thereby failed to comport with Local Rule 56 and oppose the facts supporting UTC's motion for summary judgment. Based on our thorough review of the record, we see no abuse of discretion in the district court's ruling on this point.

Rodríguez-Severino also argues that the district court was obliged under Local Rule 56 to accept citations to allegations contained in his EEOC charges, to which he cites repeatedly in his own statement of uncontested material facts under Local Rule 56(c). Rodríguez-Severino, relying on Medfit Int'l, Inc., argues that these unsworn statements were made under penalty of perjury and therefore should have been given more credence by the district court. See 982 F.2d at 689. Instead, the district court stated that mere allegations are not evidence and cannot be used to defeat

a summary judgment motion and ruled that Rodríguez-Severino needed to bring forth direct evidence of his claims.[4]

Rodríguez-Severino is correct that he could choose to rely on his own unsworn statements made under penalty of perjury because this court will indeed recognize such a statement in lieu of an affidavit in support of a motion for summary judgment. See Ramírez Rodríguez, 425 F.3d at 82 ("unsworn statement under penalty of perjury . . . is admissible for summary judgment purposes"); Medfit Int'l, Inc., 982 F.2d at 689 (unsworn written statement may be given same weight as an affidavit when the requirements of 28 U.S.C. § 1746 -- statement signed "under penalty of perjury that [the statements are] true and correct" -- are met). And for good reason: The information set out in these statements would be direct evidence if Rodríguez-Severino had rewritten the information in the form of an affidavit and submitted the affidavit with his opposition to UTC's motion for summary judgment or, if this case went to trial, Rodríguez-Severino offered this information as direct testimony. Rodríguez-Severino's statement of undisputed facts did not rely on allegations from the complaint he filed to initiate this federal action but on statements he signed under penalty of perjury and submitted to the EEOC. As

---

[4] As the district court noted, almost all of Rodríguez-Severino's factual assertions in his own statement of material facts under Local Rule 56(c) cited to the EEOC charges he had filed.

such, the district court should not have completely discounted these documents as part of Rodríguez-Severino's opposition to UTC's summary judgment motion and should have accepted his own statement of material facts.

That said, the district court's error on this point does not affect our conclusion that it did not abuse its discretion by deciding to deem UTC's statement of undisputed facts to be uncontroverted for the other reasons we discussed supra and because Rodríguez-Severino failed to use these parts of the record to properly controvert UTC's statement or, as we will soon discuss, to identify any genuine issues of material fact about his Title VII retaliation claim. See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) ("Not every discrepancy in the proof is enough to forestall a properly supported motion for summary judgment; the disagreement must relate to some genuine issue of material fact.").

Finally, we address a further argument Rodríguez-Severino makes regarding UTC's statement of uncontested facts. Relying on Reeves, he argues that the statements from Cariño, Del Toro, and Vélez should not be allowed in support of UTC's motion for summary judgment because they are an interested party and their statements are therefore self-serving. In so arguing, Rodríguez-Severino relies on the following passage from Reeves:

> Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."

530 U.S. at 151 (citation omitted) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 (2d ed. 1995)).

Nevertheless, we have already addressed this precise argument in Dennis v. Osram Sylvania, Inc., 549 F.3d 851 (1st Cir. 2008). There, as here, the appellant argued that the district court at the summary judgment stage should not have credited certain declarations because the declarants were interested parties. Id. at 856. In response, we held that the appellant misread the scope of Reeves and explained that "[a]t summary judgment we need not exclude all interested testimony, specifically testimony that is uncontradicted by the nonmovant." Id. (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 271–72 (3d Cir. 2007)). Doing so, we acknowledged, would make it impossible for employers to defend against retaliation claims, especially at the second step of the burden-shifting framework described infra. Id. As we concluded above, Rodríguez-Severino failed to adequately controvert UTC's statement of uncontested material facts and, like the appellant in Dennis, he reads Reeves

- 23 -

too narrowly to compel the result he seeks.  We decline to find an abuse of discretion in the district court's decision.

## B. **Grant of Summary Judgment**

### 1. **Standard of Review**

We review a district court's grant or denial of summary judgment de novo, examining the record in the light most favorable to the nonmovant and drawing all reasonable inferences in that party's favor.  Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015).  The party moving for summary judgment must show that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### 2. **Analysis**

#### a. **Title VII Retaliation Claim**

Rodríguez-Severino argues that the district court erroneously denied his retaliation claim under Title VII.  He argues that the district court's conclusion that Cariño did not know about his ombudsman complaint was erroneous and that the actions taken against him following that complaint constituted adverse employment actions.  He contends that circumstantial evidence from that time raises an inference that Cariño did know about his complaint because they began treating him differently. Finally, even relying only on Cariño's actions following the first EEOC charge, when it was clear he knew that Rodríguez-Severino had

- 24 -

filed a complaint against him, Rodríguez-Severino posits that the district court erroneously concluded that there was no adverse employment action during that period, relying primarily on Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006). Rodríguez-Severino, however, fails to challenge the district court's conclusion that, even if he had made out a prima facie case, he was unable to rebut the non-discriminatory reasons provided by UTC for its actions against him. Instead, he trains his briefing to us primarily on the components of his prima facie case and why he has met them. Therefore, we likewise primarily consider that aspect of the district court's ruling in our de novo review.

"Title VII bars employers from retaliating against an . . . employee because []he 'has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir. 2014) (quoting 42 U.S.C. § 2000e-3(a)). We utilize a familiar burden-shifting framework to evaluate retaliation when direct evidence is lacking, as it is here. To establish a prima facie case of retaliation, Rodríguez-Severino must first show: "(1) []he engaged in protected conduct; (2) []he suffered an adverse employment action; and (3) that a 'causal nexus

exists between the protected [conduct] and the adverse action.'" Id. (third alteration in original) (quoting Ponte v. Steelcase Inc., 741 F.3d 310, 321 (1st Cir. 2014)). "Once the plaintiff makes out this prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory explanation for its actions." Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 175 (1st Cir. 2015). If the defendant is able to do so, the burden then returns to the plaintiff "to show that the defendant's explanation is a pretext for unlawful retaliation." Id.

The district court, relying on its assessment of the uncontested facts, first found that Rodríguez-Severino was unable to rebut UTC's assertion that Cariño was unaware that Rodríguez-Severino had filed the complaint with the ombudsman's office. Therefore, for purposes of retaliation, the district court found that Cariño did not know that Rodríguez-Severino had filed a complaint until November 2016 when he made his first EEOC charge. The district court further held that even if Cariño was aware of the earlier complaints, there was not sufficient evidence of a hostile work environment to rise to the level of an adverse employment action and, even assuming Rodríguez-Severino could make out a prima facie case of retaliation, UTC has proffered an adequate, non-retaliatory reason for its actions. Moreover, the district court found that none of UTC's actions toward Rodríguez-Severino following the first EEOC charge in November 2016, which

Cariño was aware of and which unquestionably constitutes protected conduct, constituted adverse employment actions. The court thus concluded that Rodríguez-Severino could not make out a prima facie case of retaliation.

As a threshold matter, for us to consider any of Cariño's actions before November 2016, Rodríguez-Severino must show that Cariño was aware of his ombudsman complaint "[b]ecause 'one cannot have been motivated to retaliate by something he was unaware of.'" Delaney v. Town of Abington, 890 F.3d 1, 6 (1st Cir. 2018) (quoting Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013)). Rodríguez-Severino asserts on appeal that due to the nature of the investigation, it was not difficult for Cariño to determine who had filed the confidential complaint. He alleges this is so because the training where the inappropriate comment was made was given to ten employees and only five were interviewed as part of the investigation, including Cariño, and that Rodríguez-Severino himself was not interviewed. Even drawing all reasonable inferences in favor of Rodríguez-Severino, we cannot agree with the assertion that Cariño would have known Rodríguez-Severino filed the complaint. There were four other employees apart from Rodríguez-Severino present at the training that were not interviewed and easily could have been the complainant. Moreover, it is undisputed that Rodríguez-Severino did not tell anybody that he had filed the ombudsman complaint until June of 2016, when he

voluntarily told Del Toro. Del Toro did not share this information with anyone else, and Rodríguez-Severino did not tell anyone else about the ombudsman complaint. Therefore, we agree with the district court that Cariño was not aware of the ombudsman complaint and only became aware of any complaint in November 2016, when Rodríguez-Severino filed his first EEOC charge. Accordingly, any actions taken by Cariño prior to the first EEOC charge in November 2016 do not constitute retaliation, as one cannot retaliate without any knowledge of the protected activity. See Delaney, 890 F.3d at 6.

With this time frame squarely in mind, we turn to the requirements to make out a prima facie case for retaliation: First, protected activity. Neither party disputes that the EEOC charge constituted protected activity. Therefore, we move to the second prong of the prima facie case: whether Rodríguez-Severino suffered an adverse employment action as a result of said protected conduct. Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002).

Examples of adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Id. We measure whether an action was adverse using an objective standard, Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996), and accordingly "the mere fact that an

employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Id. "[A] plaintiff may satisfy this requirement by showing that 'a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"'" Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (quoting Burlington N., 548 U.S. at 64).

In his briefing on the issue, Rodríguez-Severino claims the following were adverse employment actions taken against him, primarily by Cariño: (1) The creation of a new third shift by Cariño, to which Rodríguez-Severino was the only assigned employee and his alleged corresponding deprivation of training opportunities and ability to continue working on certain projects; (2) Cariño's attitude towards Rodríguez-Severino, shown through discrete actions such as his responses to Rodríguez-Severino's requests for time off and not permitting Rodríguez-Severino to return until he had the appropriate documentation; and (3) his eventual transfer to OPEX where he alleged that he was no longer able to grow as an EH&S professional.

As to Rodríguez-Severino's transfer to the third shift, he cannot surmount the hurdle that we have already identified. He was transferred to the third shift in June 2016, but we have

- 29 -

already established supra that Cariño, the alleged retaliator, did not know about Rodríguez-Severino's ombudsman complaint and was unaware that Rodríguez-Severino had made any complaint against him until November 2016 when the first EEOC charge was filed. Therefore, the transfer to the third shift cannot constitute retaliation for Rodríguez-Severino's complaint since Cariño was not aware of it. See Delaney, 890 F.3d at 6.

As to the other alleged adverse employment actions which took place after the filing of the first EEOC charge, Cariño's general treatment of Rodríguez-Severino and Rodríguez-Severino's eventual transfer to OPEX, we agree with the district court that they do not constitute adverse employment actions under our jurisprudence. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N., 548 U.S. at 67; see also Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 40 (1st Cir. 2011) ("To establish an adverse employment action, [plaintiff] must show []he suffered material harm."). Here, Rodríguez-Severino has failed to establish the requisite material harm needed for an adverse employment action. The adverse action must carry with it "tangible consequences." See Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 73 (1st Cir. 2011). Rodríguez-Severino did not establish any material harm or tangible consequences from Cariño's alleged treatment of him or his transfer to OPEX. Indeed,

his transfer to OPEX led to a new supervisor, as well as the ability to work the first rather than the third shift. Rodríguez-Severino claims, without tangible proof, that his transfer to OPEX affected his ability to progress as an EH&S professional. This allegation, without more, does not suffice to establish material harm. See Colón-Fontánez, 660 F.3d at 40-41 ("This conclusory allegation [that lack of training would affect plaintiff's progress as a professional] is not sufficient for purposes of establishing a 'significant, not trivial, harm' that rises above mere 'inconvenience.'" (quoting Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 20 (1st Cir. 2006))).

Cariño's actions towards Rodríguez-Severino did not carry tangible consequences. Rodríguez-Severino did not proffer evidence that he had been disciplined or reprimanded by Cariño. "Rather, each [action] was merely directed at correcting some workplace behavior that management perceived as needing correction." Bhatti, 659 F.3d at 73. Based on UTC's uncontested statement of material facts, many of Cariño's actions towards Rodríguez-Severino were brought about by the latter's shortcomings in his work and the need to correct them. Without said consequences, Rodríguez-Severino's retaliation claim cannot succeed as UTC's actions towards him cannot qualify as adverse employment actions.

The Supreme Court has cautioned that Title VII "does not set forth 'a general civility code for the American workplace.'" Burlington N., 548 U.S. at 68 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Accordingly, Title VII antiretaliation law does not protect an "employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. Rodríguez-Severino did not bring forth sufficient evidence at the summary judgment stage to establish that he suffered any adverse employment action at the hands of UTC. Therefore, we agree with the district court that he is unable to make out a prima facie case for retaliation under Title VII. Necessarily, then, his appeal must fail.

b. **Puerto Rico Law 115 Claim**

Rodríguez-Severino notes briefly -- in one sentence -- that the dismissal of his supplemental claims under Puerto Rico Law 115 should be vacated and remanded for the same reasons and analysis as his Title VII retaliation claims. Substantively, Title VII antiretaliation law and the antiretaliation provisions under Puerto Rico Law 115 largely overlap. Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 97 (1st Cir. 2018). Given the symmetry between the antiretaliation provisions under Title VII and Puerto Rico Law 115, we affirm the dismissal of Rodríguez-Severino's Puerto Rico antiretaliation law claims for much the same reasons as we affirmed the dismissal of his Title VII claims. See Bonilla-

Ramirez v. MVM, Inc., 904 F.3d 88, 96-97 (1st Cir. 2018) ("[A]s [appellant] makes no argument that [his] Puerto Rico law claims survive if [his] Title VII claims do not, we affirm the District Court's summary judgment ruling dismissing [appellant's] claims [under] . . . Puerto Rico Law 115 . . . ."). Furthermore, even if Rodríguez-Severino's Law 115 claim does survive the dismissal of the Title VII retaliation claim, we consider it waived for lack of any meaningful development, as Rodríguez-Severino does not address said claim apart from one sentence at the conclusion of his brief. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

## III. **Conclusion**

The judgment of the district court is

**AFFIRMED**. Each party to bear its own costs.