# United States Court of Appeals
## For the First Circuit

No. 23-1744

ERASTO ROMÁN MERCADO,

Plaintiff, Appellant,

v.

HYANNIS AIR SERVICE, INC.,
d/b/a Cape Air/Nantucket Airlines,

Defendant, Appellee,

TEXTRON AVIATION INC.; CAPE AIR CORP.; NANTUCKET AIRLINES,
A,B,C INSURANCE COMPANIES,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. District Judge]

Before

Gelpí, Lipez, and Rikelman,
Circuit Judges.

Eugenio W.A. Géigel-Simounet, with whom GS Law Offices P.C.
was on brief, for appellant.

Tatiana Leal González, with whom Juan Felipe Santos, Ana B.
Rosado-Frontanés, and Jackson Lewis LLC, were on brief, for
appellee.

September 22, 2025

**GELPÍ**, **Circuit Judge**.  About five months after he began receiving treatment for a work-related injury, Plaintiff-Appellant Erasto Román Mercado ("Román") received a letter from his employer, Defendant-Appellee Hyannis Air Service Inc. ("Cape Air"), informing him that he was terminated from his job as a cross train agent.[1]  Román sued Cape Air in the U.S. District Court for the District of Puerto Rico, alleging various state and federal claims. The district court disposed of all of them -- some at the motion to dismiss and others at the summary judgment stage.

In this appeal, Román challenges only the district court's summary judgment ruling as to his retaliation claim under Puerto Rico's Whistle-Blower Act, P.R. Laws Ann. Tit. 29 § 194 ("Law 115").  We are hence called upon to determine whether a jury should be the one who determines if Cape Air's reasons for Román's termination were pretextual, and, ultimately, whether Cape Air retaliated against him under Law 115.  While the district court believed that the issue should be resolved at the summary judgment stage -- and so ruled -- we, however, see it differently.  We thus vacate the district court's entry of summary judgment as to Román's Law 115 claim and remand for further proceedings.

---

[1] A cross train agent at Cape Air performs a multifaceted role that involves customer service, operations, and ramp duties.

# I. BACKGROUND

## A. Facts

Cape Air is an airline company headquartered in Hyannis, Massachusetts. Among other locations across the continental United States, Cape Air provides services in the Caribbean, including Vieques, San Juan, and Mayagüez, Puerto Rico. In 2005, Román began working for Cape Air as a cross train agent in the Mayagüez station. He was one of three agents who were responsible for, among other things, operations, checking in passengers, working the counters, and working the ramp. Over a decade after beginning his tenure with Cape Air, however, Román's employment with the company took an unexpected turn.

On April 16, 2017, when, during a shift, Román opened the top portion of the passengers' cabin door of the airplane to let a customer disembark, the door's support suddenly unhinged, hitting Román's forehead with significant force. Pilot Alberto Espinosa, who was present when the incident occurred, filed a "Flight Crew Analyst Incident Report" ("Form 3590"), which stated:

> Maintenance NEED to do their job! The airplane's cabin door was worked on two days prior to the incident. After close inspection, I noticed that they forgot to install the locking safety clips on both the top and bottom strut sockets. It was just a matter of time before one popped off and let the door fall on someone, even a passenger.

Soon after the incident, Román alerted his then-supervisor of what had transpired. Román nonetheless

continued working until the end of his shift and then drove himself to a nearby hospital where, after being evaluated, he was diagnosed with unspecified superficial injury to the skull. Sometime later, Román asked Cape Air for the incident report to seek medical treatment with Puerto Rico's workers' compensation system: the State Insurance Fund ("the Fund"). Cape Air, however, neither gave him the report nor informed him that the same was necessary to seek treatment from the Fund.[2] Instead, Cape Air told him to use his personal insurance. As a result, Román did not immediately seek help at the Fund.[3]

Six months after the incident, on October 21, 2017, Román went to the emergency room at a nearby hospital, where he underwent an examination.[4] Then over a year later, on November 29, 2018 -- after experiencing neck pain and numbness in his hands for several months -- Román sought medical treatment. The chiropractor ordered him to undergo a cervical magnetic resonance

---

[2] While Cape Air did not file a Work Accident Report with the Fund immediately after the incident, it eventually did so in March 2019, upon discovering that it had never been filed with the Fund. Cape Air amended the report on May 23, 2019, to correct the case number. Cape Air admitted that the report should have been filed in 2017, right after Román's accident -- that is, almost two years earlier.

[3] Román's supervisors never instructed him to avoid reporting to the Fund, nor did they impose disciplinary actions or suggest that seeking medical treatment from the Fund would alter the terms of his employment.

[4] After the examination, Román was referred to a neurological evaluation.

imaging ("MRI"), which showed that Román had C6-C7 stenosis, a condition associated with pain and numbness. Román also visited a physician on November 30, 2018, who referred Román to the Fund. On that same date, Román reported to the Fund and began receiving treatment.

Because Román could not continue working at the time, Cape Air placed him on leave on December 5, 2018, under the Family and Medical Leave Act ("FMLA"). The leave was set to expire on February 27, 2019. From December 2018 to February 2019, Fund personnel examined Román five times and placed him on rest until February 13, 2019. About a week before his rest period ended, however, Román had neck surgery. As a result, Fund personnel examined him again on February 13, March 17, and April 29, 2019, ultimately placing him on rest until June 12, 2019, with a return-to-work date of June 13, 2019.

Meanwhile, at the time Román was receiving treatment at the Fund, he informed Supervisor José Calo ("Calo") on April 29, 2019, that he would begin physical therapy in June 2019. The next day, Calo emailed Elizabeth Kennelly ("Kennelly"), Cape Air's Director of Benefits, stating his intention to have lunch with Román at the end of the week. Calo intended to inform Román during the lunch meeting that his employment with Cape Air would be terminated. But the lunch meeting did not materialize. So, on June 10, 2019, Kennelly sent Román a termination letter

retroactively effective as of May 21, 2019:  "You have failed to keep us informed of your status.  We made several attempts to contact you via telephone, email and text and we have had no response from you.  This letter is to inform you that effective 5/21/2019, your employment with Cape Air is terminated."

At the time Kennelly sent the termination letter, she knew that Román was receiving treatment with the Fund and that he was to be on rest until June 12, 2019.  It is undisputed that from the time Román first reported to the Fund on November 30, 2018, to the time Cape Air terminated him on May 21, 2019, Román could not exercise his functions as a cross train agent for Cape Air.[5]

## B. Procedural History

Román sued Cape Air and others[6] in the U.S. District Court for the District of Puerto Rico, alleging a slew of claims under state and federal law, including the retaliation claim under Law 115.[7]  The district court dismissed his claims, some for failure

_____

[5] Román's rest period was ultimately extended until July 23, 2020.

[6] Though Román also brought a cause of action against A,B,C Insurance Companies and Textron Aviation Inc, the claims against them are not at issue in this appeal.

[7] Román brought claims against defendants under (1) the Americans with Disabilities Act, 42 U.S.C. § 12101; (2) the FMLA, 29 U.S.C. § 2601; (3) the Federal Aviation Act of 1958, 42 U.S.C. § 101; (4) the Occupational Safety and Health Act, 29 U.S.C. § 651; (5) 42 U.S.C. §§ 1983 and 1985; (6) Puerto Rico Law 100 of June 30, 1959, P.R. Laws Ann. Tit. 29 § 146; (7) Puerto Rico Law 80 of May 30, 1976, P.R. Laws Ann. Tit. 29 § 185a ("Law 80"); (8) Puerto Rico's workers' compensation statute, Law 45 of April 18, 1935, as amended, P.R. Laws Ann. Tit. 11 § 1; and (9) Articles 1802 and

to state a claim, and the remainder at the summary judgment stage. On appeal, Román challenges only the district court's summary judgment dismissal of his retaliation claim under Law 115, contending that Cape Air fired him because he reported to the Fund: a protected activity under Puerto Rico law.

The district court entered summary judgment as to Román's retaliation claim under Law 115 on the ground that he failed to establish causation.  It concluded that the five-month time span between Román's protected conduct (the initial report to the Fund) and Cape Air's adverse action (dismissing Román from his employment) was too lengthy to establish the requisite causal connection.  Relying on Calero-Cerezo v. United States Department of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004), and Colburn v. Parker Hannifin/Nichols Portland Division, 429 F.3d 325, 337-38 (1st Cir. 2005), the district court held that our precedent foreclosed a finding of causation.

The district court alternatively concluded that, even if Román had proven causation, his Law 115 claim still would falter because Cape Air's proffered reasons for discharging him did not appear to be pretextual.  Román timely appealed.

---

1803 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31 §§ 5141 and 5142.

## II. DISCUSSION

### A. Standard of Review

We review de novo a district court's order granting a motion for summary judgment.  Colburn, 429 F.3d at 329-30.  In doing so, we examine "the record in the light most favorable to the nonmovant[,] . . . drawing all reasonable inferences in that party's favor."  Quintana-Dieppa v. Dep't of the Army, 130 F.4th 1, 7 (1st Cir. 2025) (quoting Dusel v. Factory Mut. Ins., 52 F.4th 495, 502-03 (1st Cir. 2022)).

To prevail on a motion for summary judgment, the moving party "must demonstrate that 'there is no genuine dispute as to any material fact' and that it 'is entitled to judgment as a matter of law.'"  Dusel, 52 F.4th at 503 (quoting Murray v. Kinder Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015)).  "Facts are material when they have the 'potential to affect the outcome of the suit under the applicable law.'"  Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).  And disputes are "genuine when the evidence is such 'that a reasonable jury could resolve the point in favor of the nonmoving party.'"  Quintana-Dieppa, 130 F.4th at 7 (quoting Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018)).

But "the decisive criterion on a summary judgment motion is not a comparative one."  Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  The rule governing summary

- 8 -

judgment, Federal Rule of Civil Procedure 56, "does not ask which party's evidence is more plentiful, or better credentialled, or stronger."  Id.  "Rather, the rule contemplates an abecedarian, almost one dimensional, exercise geared to determining whether the nonmovant's most favorable evidence and the most flattering inferences which can reasonably be drawn therefrom are sufficient to create any authentic question of material fact."  Id.

Defeating a motion for summary judgment in a retaliation case does not require the plaintiff to "prove retaliation by a preponderance of the evidence."  Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 175 (1st Cir. 2015).  Indeed, summary judgment has "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the carapace of the cold record."  Greenburg, 835 F.2d at 936.  "All a plaintiff has to do is raise a genuine issue of fact as to whether retaliation motivated the adverse employment action."  Planadeball, 793 F.3d at 175 (citation modified).  If so, the plaintiff is entitled to have the claim heard by a jury of peers.  We now turn to the merits of Román's claim.

**B. The Law 115 Retaliation Claim**

Román argues that the district court erred in granting Cape Air's motion for summary judgment on his Law 115 retaliation

claim because genuine issues of material fact exist regarding the reason for the termination. In so claiming, Román advances three contentions: first, that the district court erroneously held that he failed to establish a causal connection between his reporting to the Fund and his termination; second, that the district court erred in concluding that he did not show that his dismissal was pretextual; and third, that the district court misapplied the summary judgment mechanism.

Law 115 prohibits employers from discharging, threatening, or discriminating against an employee who offers, among other things, any "information before a legislative, administrative, or judicial forum in Puerto Rico." P.R. Laws Ann. Tit. 29, § 194a(a). That statutory proscription extends, as interpreted by the Puerto Rico Supreme Court, to an employer's retaliation premised upon an employee seeking benefits with the Fund. See Santana-Colón v. Houghton Mifflin Harcourt Publ'g Co., 81 F. Supp. 3d 129, 136 (D.P.R. 2014) (citing Feliciano Martes v. Sheraton, 2011 PRSC 97). To prevail on such a retaliation claim, the plaintiff must first establish -- "through direct or circumstantial evidence" -- the prima facie case. P.R. Laws Ann. Tit. 29, § 194a(c). This requires the plaintiff to show that (1) he participated in a protected activity; (2) the employer took adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse

employment action.  See P.R. Laws Ann. Tit. 29, § 194a(c); see also Santana-Colón, 81 F. Supp. 3d at 136.  Once the plaintiff meets that burden, the employer must provide a "non-discriminatory legitimate reason for the discharge."  P.R. Laws Ann. Tit. 29, § 194a(c).  If the employer provides a legitimate reason, then the burden shifts back to the plaintiff to "demonstrate that the alleged reason provided by the employer was a mere pretext for the discharge."  Id.

Law 115's statutorily enacted burden-shifting approach espouses the same principles as the familiar McDonnell Douglas framework, which federal courts employ to evaluate Title VII retaliation claims.  See generally McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973); see also Calero-Cerezo, 355 F.3d at 26 (stating that if the plaintiff establishes "a prima facie showing of retaliation, the McDonnell Douglas burden-shifting approach is employed, and defendant must articulate a legitimate, non-retaliatory reason for its employment decision," and "if the defendant meets this burden, the plaintiff must [then] show that the proffered legitimate reason is in fact a pretext").  This is so because "[a]ny law or regulation of Puerto Rico that regulates employer-employee relationships and that refers to an issue that is similar to an issue regulated by an act of the United States Congress . . . [must] be interpreted consistently with said federal regulations, unless the Puerto Rico law expressly requires

- 11 -

a different interpretation." P.R. Laws Ann. Tit. 29, § 122l. And thus, "[w]hen applying the provisions of any discrimination or retaliation in the workplace law, the provisions of federal legislation and regulations as well as the judicial interpretations thereof of courts with jurisdiction in Puerto Rico shall be recognized, in order to ensure consistency in interpretations." P.R. Laws Ann. Tit. 29, § 123a.

To that end, "federal courts have consistently treated a claim under Law 115 the same as a claim pursuant to Title VII's antiretaliation provision." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 98 (1st Cir. 2018) (citation modified); see also Rodríguez-Severino v. UTC Aerospace Sys., 52 F.4th 448, 465 (1st Cir. 2022) ("Substantively, Title VII antiretaliation law and the antiretaliation provisions under Puerto Rico Law 115 largely overlap."). Accordingly, in determining whether a plaintiff has established a prima facie case and demonstrated that the employer's reasons in taking the adverse action against him were pretextual under Law 115, we look for guidance in our body of cases interpreting Title VII's antiretaliation provision. See id.

Here, the parties do not dispute the first two elements of the retaliation prima facie case: that Román engaged in protected conduct and that Cape Air took adverse employment action against him. What the parties do dispute, however, is whether Román brought forth evidence of causation.

- 12 -

Cape Air argues that Román's claims fail at the summary judgment stage because he did not establish a causal connection between his protected activity (reporting to the Fund) and the adverse action (the termination), which occurred five months later. In Cape Air's view, the five-month time gap is not sufficient to establish a temporal connection. And, in the alternative, Cape Air contends that Román's case independently fails because he did not demonstrate that Cape Air's reasons for the termination were pretextual.[8] Cape Air maintains that Román's inability to return to work after exhausting his FMLA leave as well as the need to have a third cross train agent to run the operations were legitimate justifications to discharge him, which he, in turn, could not rebut. On these grounds, Cape Air posits that Román's failure to prove causation and pretext warrants affirmance of the district court's entry of summary judgment.

---

[8] Cape Air also argues that Román's failure to appeal the district court's dismissal of his wrongful discharge claim under Law 80, the statute governing wrongful termination claims, precludes a finding of retaliation under Law 115 -- the statute governing retaliation claims. But we disagree. While Román does not challenge the district court's finding that he has not shown pretext in the context of his Law 80 claim, he does challenge that finding in the context of his Law 115 claim. We therefore do not see how he waived his challenge to the district court's pretext determination. Of course, because Román has not appealed the dismissal of his Law 80 claim, our holding here is necessarily limited to his Law 115 claim. That is, the district court's conclusion that Román is not entitled to proceed to a jury on his Law 80 claims remains undisturbed.

Close temporal proximity between the protected conduct and the adverse employment action may suffice at the prima facie stage to evidence causation between the protected activity and the adverse action. See Stratton v. Bentley Univ., 113 F.4th 25, 45 (1st Cir. 2024); see also Kinzer v. Whole Foods Mkt., Inc., 99 F.4th 105, 117 (1st Cir. 2024) (noting that the timing of the "termination alone is sufficient to meet the relatively light burden of establishing a prima facie case of retaliation" (citation modified)). But those "cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citation omitted). And when relying solely on temporal proximity, we have found that a lapse of four months between the protected conduct and the adverse employment action does not constitute the "very close" time frame required to establish causation. See Colburn, 429 F.3d at 338 (concluding that no retaliatory motive may be inferred because the plaintiff was terminated almost four months after engaging in the protected conduct). So, because Román was terminated five months after he reported to the Fund, Cape Air argues that close temporal proximity is absent here and, therefore, Román cannot establish his prima face case.

Although close temporal proximity alone between the protected conduct and the adverse employment action may, at times, suffice to prove causation between the two events, a plaintiff need not always demonstrate close temporal proximity to demonstrate the nexus. We have explained that "[t]emporal proximity is [only] one factor from which an employer's bad motive can be inferred." Stratton, 113 F.4th at 49 (quoting Carrero-Ojeda v. Autoridad De Energía Eléctrica, 755 F.3d 711, 720 (1st Cir. 2014)). In other words, temporal proximity is not the only way to prove causation. Indeed, a "plaintiff can still succeed on a retaliation claim despite a lack of proximity" between the protected conduct and the adverse action. Soni v. Wespiser, 404 F. Supp. 3d 323, 333 (D. Mass 2019). "So long as the plaintiff can link the adverse action to the protected activity sufficient to create an inference to support a causal connection, the passage of time in and of itself is not fatal to his or her retaliation claim." Saxena v. Univ. of Mass. Med. Sch., 442 F. Supp. 3d 395, 404 (D. Mass 2020).[9] The district court legally erred in treating

---

[9] Consider the implications if close temporal proximity becomes the sole condition for demonstrating causation. Under such a rule, an employer's retaliatory conduct becomes immune from antiretaliation suit merely because of the passage of time. If, for instance, an employer wants to retaliate against an employee who engaged in a protected activity, the employer may simply wait four or five months before taking adverse employment action against the employee, thereby frustrating the purpose of the antiretaliation statute.

- 15 -

the temporal proximity factor as a necessary condition of establishing causation.

Nothing in the summary judgment record before us establishes that Román seeks to prove causation only through temporal proximity between reporting to the Fund and Cape Air's decision to fire him.  In fact, Román admits that there was no close temporal proximity between the two events.

When the plaintiff does not rely on mere temporal proximity alone to establish causation, we may consider, as have other circuits, "the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action."  Kengerski v. Harper, 6 F.4th 531, 542 n.9 (3d Cir. 2021) (quoting Daniels v. Sch. Dis. Of Phila., 776 F.3d 181, 196 (3d Cir. 2015)); see Adebiyi v. S. Suburban Coll., 98 F.4th 886, 892 (7th Cir. 2024) ("Relevant circumstantial evidence [of causation] may include 'suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual.'" (citation omitted); Kwan v. Andalex Grp., LLC, 737 F.3d 834, 846 (2d Cir. 2013) ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses,

- 16 -

implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action."); Che v. Massachusetts Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003) (describing the various ways in which a plaintiff may establish causation other than pointing to temporal proximity). Thus, Cape Air's decision to fire Román from his job five months after he reported to the Fund is not in and of itself fatal to his retaliation claim.

Now, once an employee established the prima facie case, the burden then shifts to the employer to provide a "non-discriminatory legitimate reason for the discharge." P.R. Laws Ann. Tit. 29, § 194a(c). Here, there is no doubt that Cape Air articulated legitimate nondiscriminatory reasons for terminating Román's employment. First, Cape Air claimed that it terminated Román because it did not know when he would return to his post. And second, Cape Air explained that the termination was warranted because it needed a third operational agent. Both reasons are sufficient to meet the burden at the second stage of the burden-shifting framework, so we turn to whether Cape Air's alleged reason for the discharge amounted to mere pretext.

As with causation, our pretext inquiry focuses on "whether there exist such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the decisionmaker's proffered legitimate reasons for its action that

a reasonable factfinder could rationally find them unworthy of credence." O'Horo v. Bos. Med. Ctr. Corp., 131 F.4th 1, 15 (1st Cir. 2025) (citation modified). Since an employer's inconsistencies or contradictions in terminating an employee may -- in particular circumstances -- establish both causation and pretext, we turn to assess whether Cape Air provided inconsistent or contradictory reasons in terminating Román's employment. See Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 255 n.10 (1981) (noting that evidence of causation can prove pretext); see also Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 32 (1st Cir. 2015) (stating that if the plaintiff shows pretext, "then he necessarily has met the lesser burden that he bears at the prima facie stage of showing a causal connection between his protected conduct and the [employer's] decision to fire him"); Franchina v. City of Providence, 768 F. Supp. 3d 312, 320 (D.R.I. 2024) ("A plaintiff who establishes pretext has also established 'but-for' causation . . . ." (citation omitted)).

The district court treated the temporal proximity factor as a necessary condition of establishing causation. Likewise, in finding that Román failed to show that Cape Air's justifications for taking the adverse action were pretextual, the district court gave no weight to Cape Air's shifting explanations of Román's termination. A careful review of the record in the light most favorable to Román, however, reveals material inconsistencies

- 18 -

regarding Cape Air's reasons for the discharge. And, at the summary judgment stage, changing, adding, or contradicting the reasons for discharging an employee supports a showing of pretext and causation. See Collazo-Rosado v. Univ. of P.R., 765 F.3d 86, 93 (1st Cir. 2014) ("One way to establish pretext is to show that the [employer] gave 'different and arguably inconsistent explanations' for their actions.'" (emphases added) (quoting Domínguez-Cruz v. Shuttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000))).

Once an employer provides a reason for the termination, subsequent explanations that are inconsistent with or contradict the formally stated justification support an inference that the employer's proffered reason was pretextual. See Rodríguez Cardi v. MMM Holdings, Inc., 936 F.3d 40, 49 (1st Cir. 2019) ("[W]hen a company, at different times, gives different and arguably inconsistent explanations [for an employee's termination], a jury may infer that the articulated reasons are pretextual." (alterations in original) (quoting Domínguez-Cruz, 202 F.3d at 431 32)); see also Soto-Feliciano, 779 F.3d at 32. Here, Cape Air has provided inconsistent and contradictory explanations for Román's termination. In Román's termination letter, Cape Air stated: "You have failed to keep us informed of your status. We have made several attempts to contact you via telephone, email and text and we have had no response from you. This letter is to inform you

that effective 5/21/2019, your employment with Cape Air is terminated . . . ." Now, before us, Cape Air asserts that it terminated Román due to its "operational needs." This proffered explanation is nowhere to be found in the termination letter.

Cape Air argues that its "operational needs" explanation is not inconsistent with the termination letter because that letter did not state why Román was being terminated. Rather, Cape Air contends that the letter simply says that Román failed to inform his employer about his status and that the subsequent sentence about termination should not be read in conjunction with the preceding sentence. But a reasonable factfinder plainly could read the letter as telling Román that he was being terminated because he "failed to keep [Cape Air] informed of [his] status." We thus agree with Román that Cape Air has provided shifting explanations for his termination, which "surely supports a finding that the reason it ultimately settled on was fabricated." Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 449 (1st Cir. 2009).

Moreover, Cape Air's contradictions do not end there. In its brief, Cape Air states that it decided to fire Román in May 2019, after he failed to respond to Supervisor Calo's messages. Cape Air's counsel also reiterated this assertion during oral argument. Yet the evidence elsewhere suggests that Cape Air began considering Román's termination as early as February 2019, and that it decided to terminate him about two months later, in April

2019. In a deposition, Calo admitted, for instance, that he began discussing terminating Román at the end of February, which was just about the same time that Román's FMLA leave was set to expire. Those contradictions underscore the dubiousness of Cape Air's assertion that Román's failure to respond to Supervisor Calo in May 2019 was a reason for his termination.

While a factfinder at trial could infer that Cape Air's justification bears ample relationship with its business operation, we cannot affirm, at the summary judgment stage, that Román did not establish a prima facie case of retaliation, and that Cape Air's reasons for the termination did not amount to pretext.

### III. CONCLUSION

For the reasons stated, we vacate the district court's decision as to Román's Law 115 claim and remand for further proceedings consistent with this opinion.

It is so ordered.